IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| SAMUEL McNEIL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JEFFREY DILLMAN, et al. | : | No. 11-CV-3092 |


**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                                    June 23, 2014

Presently before me is a pro se petition for writ of habeas corpus filed pursuant to

28 U.S.C. § 2254 by Samuel McNeil, Respondents' answer and McNeil's reply.  McNeil,

who is currently incarcerated in the Smithfield State Correctional Institution in

Huntingdon, Pennsylvania, challenges his judgment of sentence for third degree murder.

For the reasons that follow, the petition will be denied.

**FACTS AND PROCEDURAL HISTORY:**

The facts underlying McNeil's conviction are as follows:

> [S]hortly after midnight on January 1, 2004, at the L.A. Bar in Allentown,
> Pennsylvania, [McNeil] was inside the bar with two companions, known
> only by their nicknames, "Snoop" and "Brooklyn."  The Commonwealth
> alleged that the owner of the bar, Leroy Johnson, asked [McNeil] to leave,
> and while attempting to escort him toward an exit leading to Allen Street,
> [McNeil] broke free, drew a handgun, and fired several bullets into the
> ceiling.  Johnson testified that [McNeil] then lowered the weapon across the
> bar and fired toward an exit leading to 7th Street.  Veronica Gyles, who had
> been standing near a jukebox adjacent to the 7th Street exit, was struck in the
> upper chest by a single bullet.  Gyles was later found outside the bar near
> the steps of the 7th Street exit.  Her wound was mortal.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 1-2 (Pa. Super. July 12, 2007).  After

a jury trial before the Honorable Robert L. Steinberg, McNeil was found guilty of murder in the third degree.  On April 20, 2005, McNeil was sentenced to a term of 20-40 years imprisonment.  McNeil filed a direct appeal.  On July 12, 2007, the Pennsylvania Superior Court affirmed the judgement of sentence.  <u>Commonwealth v. McNeil</u>, No. 3016 EDA 2005 (Pa. Super. July 12, 2007) (unpublished memorandum).  The Pennsylvania Supreme Court denied allocator on December 20, 2007.  <u>Commonwealth v. McNeil</u>, No.  MAL 200 (Pa. Dec. 20, 2007).

On October 6, 2008, McNeil filed a <u>pro se</u> petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, <u>et seq</u>.  Appointed counsel filed an amended PCRA petition on March 13, 2009.  The court held an evidentiary hearing on September 14, 2009.  The PCRA court denied McNeil's petition as meritless on December 9, 2009.  The Pennsylvania Superior Court affirmed the denial of PCRA relief on November 30, 2010.  <u>Commonwealth v. McNeil</u>, No. 119 EDA 2010 (Pa. Super. Nov. 30, 2010) (unpublished memorandum).  The Pennsylvania Supreme Court denied McNeil's petition for allowance of appeal on April 19, 2011.  <u>Commonwealth v. McNeil</u>, No.  MAL 2011 (Pa. Apr. 19, 2011).

McNeil filed a petition for a federal writ of habeas corpus on March 7, 2011,[1]

---

[1]I will assume that McNeil's petition was given to prison authorities on the date on which it was signed, March 7, 2011, and his petition will be deemed filed as of that date.  <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir. 1998) (citing <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (a <u>pro se</u> petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court).  Thus, he is within the one-year limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  28 U.S.C. § 2244(d)(1)(A) (a

claiming:

> 1) the trial court judge violated McNeil's due process rights when he denied his pre-trial habeas corpus motion;

> 2) the jury instructions given violated McNeil's due process rights;

> 3) the trial court erred by allowing a non-disclosed Commonwealth expert witness to testify about "street" slang;

> 4) the trial court erred by failing to grant a mistrial after the Commonwealth's expert witness revealed that the basis for his knowledge of "street slang" was his connection to illegal drugs;

> 5) the trial court judge abused his discretion during sentencing; and

> 6) the trial court erred in refusing to allow McNeil to discharge his attorney and appoint new counsel.

Respondents have filed an answer to McNeil's habeas petition asserting that McNeil is not entitled to federal habeas relief because his claims are procedurally defaulted and/or meritless. McNeil has filed a reply thereto.

## DISCUSSION:

### A.    Standard of Review

Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the

---

petitioner must file a habeas petition within one year of the date on which the judgment of sentence becomes final by the conclusion of direct appeal or the expiration of time for seeking such review).

adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court expounded upon this language in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  In <u>Williams</u>, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  529 U.S. at 412-413 (quoted in <u>Hameen v. Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000)).  The Court in <u>Williams</u> further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Id.</u> at 409.  "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable."  <u>Werts v. Vaughn</u>, 228 F.3d 178, 196 (3d Cir. 2000) (citing <u>Williams</u>,

4

529 U.S. at 411).

**B.     McNeil's Claims**

**1.     McNeil's pre-trial petition for writ of habeas corpus**

McNeil first asserts that the trial court erred by denying his pretrial petition for

writ of habeas corpus requesting dismissal of the charge of murder in the first degree.  In

reviewing this claim the Superior Court of Pennsylvania found that:

> Although the trial judge ultimately granted a judgment of acquittal on the charge of
> murder of the first degree, [McNeil] contends that the failure to dismiss the capital
> charge prior to the trial was prejudicial, since the qualification of a capital jury
> undermined the reliability of the jury's consideration of guilt on the lesser charge
> of murder of the third degree, and because the presence of the murder of the first
> degree charge adversely affected his defenses, trial strategies, and presentation of
> evidence.

> Our review of the denial of a habeas corpus petition, which seeks to dismiss
> criminal charges for an error of law, is governed by the following principles:
> At the pretrial stage of a criminal prosecution, it is not necessary for the
> Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but
> rather, its burden is merely to put forth a prima facie case of the defendant's guilt.
> A prima facie case exists when the Commonwealth produces evidence of each of
> the material elements of the crime charged and establishes sufficient probable
> cause to warrant the belief that the accused committed the offense.  The evidence
> need only be such that, if presented at trial and accepted as true, the judge would
> be warranted in permitting the case to go to the jury.  Moreover, inferences
> reasonably drawn from the evidence of record which would support a verdict of
> guilty are to be given effect, and the evidence must be read in a light most
> favorable to the Commonwealth's case.

****

> In order to prosecute a defendant on the charge of murder of the first degree, the
> Commonwealth must establish that "the defendant acted with a specific intent to
> kill and that the killing was willful, deliberate and premeditated."  The
> Commonwealth may prove a specific intent to kill by wholly circumstantial

5

evidence, and the defendant's use of a deadly weapon on a vital part of the victim's body may support an inference that the defendant specifically intended to kill the victim.

[McNeil] specifically argues that the Commonwealth failed to establish a prima facie case that he acted with a specific intent to kill, and that the trial court therefore erred in failing to dismiss, prior to trial, the charge of murder of the first degree.  In response to [McNeil's] habeas petition, the Commonwealth had produced testimony that [McNeil] had drawn and fired multiple times prior to firing the weapon in the direction of an entrance/exit to 7th Street, where the victim was struck in the upper chest with a single round.  Mindful that we must view this evidence and draw inferences in favor of the Commonwealth's case, we find no error in the conclusion of the trial judge that the act of intentionally lowering and firing the weapon in the direction of a vital part of the victim's body constituted a prima facie case of murder in the first degree.  Therefore, we discern no basis upon which to conclude that the trial court erred in denying [McNeil's] petition seeking a dismissal of the first degree murder charge.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 4-7 (Pa. Super. July 12, 2007).

McNeil asserts that he should not have been charged with first degree murder because he did not possess the requisite intent to kill.  See Memorandum in Support of Petition for Writ of Habeas Corpus at 1.  However, this argument is based on state law. Federal courts reviewing habeas claims cannot reexamine state court determinations of state law questions.  See Preister v Vaughn, 382 F.3d 394, 402 (3d Cir. 2004).  Review is limited to determining whether a state court's finding was so arbitrary or capricious as to constitute an independent due process violation.  See Lewis v. Jeffers, 487 U.S. 764 780 (1990).  Based upon the state's reasoned explanation, I conclude that the state court did not make any arbitrary or capricious factual determinations and that McNeil's constitutional right to due process was not violated.  Therefore, this claim is denied.

6

### 2.      Jury Instructions

In his second claim, McNeil contends that "the trial judge's final instructions to the jury were in error" and thereby violated his due process rights.  McNeil asserts that the jury instructions were in error in five areas: causation, malice, motive, failure to include a missing witness and missing evidence instruction.

As a general rule, a trial judge has broad discretion in framing the form and language of the charge to the jury.  United States v. Traitz, 871 F.2d 368, 383 (3d Cir. 1989).  A jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974). "To show that a jury instruction violates due process, a habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, and (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  Williams v. Beard, 637 F.3d 195, 223 (3d Cir. 2011) (citing Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (quotation omitted)). Satisfaction of this two-part inquiry requires a federal habeas court to focus initially on the specific language challenged and then to review the challenged instruction in the context of the entire charge and in light of the evidence and arguments presented at trial. Id.

a.      Causation

McNeil first asserts that the trial judge provided the jury with the following

"inherently contradictory standard on causation:"

> The Commonwealth is required to prove, beyond a reasonable doubt, that the defendant caused the death of Veronica Gyles.  You cannot find the defendant killed or caused the death of another person, unless you're satisfied beyond a reasonable doubt that the defendant's conduct was the direct cause of death.  In order to be a direct cause of death, a person's conduct must be a direct and substantial factor in bringing about the death.  Did the defendant's conduct start a chain of causation that lead to Veronica Gyle's death?

See N.T. 2/9/05, at 156.  In reviewing this claim the Superior Court of Pennsylvania

found that:

> [McNeil's] complaint regarding the "chain of causation" must be read in light of the trial court's charge as a whole.  Our review of that charge reveals that the trial judge emphasized that the jury had to consider (1) whether [McNeil's] conduct was a direct and substantial cause of the victim's death, (2) whether [McNeil], in fact, drew the weapon, and fired the weapon into the ceiling, across the bar, or both, and (3) whether those acts exhibited malice.  We conclude that any confusion arising from the trial court's inartful question was mitigated by the complete and accurate charge on the elements of murder of the third degree.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 11-12 (Pa. Super. July 12, 2007).

In the instant case, McNeil was convicted of third degree murder.  In

Pennsylvania there is a two-part test to determine criminal causation:

> First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred.  A victim's death cannot be entirely attributable to other factors; rather, there must exist a causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence to time and place.  Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

Commonwealth v. Buterbaugh, 2014 WL 1898968 (Pa. Super. May 13, 2014).

I find that even if the trial court's charge was in some respect ambiguous, there is no reasonable likelihood that the jury applied the instruction in a manner that relieved the Commonwealth of their burden of proof. The trial record is clear, the evidence and testimony presented indicates that McNeil's actions caused the death of Veronica Gyles. As a result, this claim is denied.

**b.    Malice**

In his next challenge to the jury instruction, McNeil asserts that the trial judge failed to "adequately define how malice can be inferred from pointing a weapon at a vital part of the body." In instructing the jury, the trial judge stated:

> A killing is with malice if the killer acts with any one of the following mental states . . . one, an intent to kill; two, an intent to inflict serious bodily injury . . . an extreme indifference to the value of human life, a conscious disregard of an unjustified and extremely high risk that one's actions might cause death or serious bodily injury.
>
> ***
>
> If you believe that the defendant intentionally used a deadly weapon on a vital part of Veronica Gyle's body, you may regard that as an item of circumstantial evidence, from which you may, if you choose, infer that the defendant acted with malice.

See N.T. 2/9/05, at 152.

In denying this claim, the Superior Court noted:

[McNeil] argues that the trial court should have further defined the phrase "intentionally used a deadly weapon" as "the purposeful direction of the firearm at

a vital part of Veronica Gyle's body."  This claim lacks merit since, as we have previously discussed, there is no requirement under the law that malice be proved by the purposeful direction of a weapon toward a vital part of the body of the individual.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 12 (Pa. Super. July 12, 2007).

In Pennsylvania, the standard third degree murder instruction as to malice is as

follows:

> When deciding whether the defendant acted with malice, you should consider all the evidence regarding his words, conduct and the attending circumstances that may show his state of mind. If you believe that a defendant intentionally used a deadly weapon on a vital part of [victim's] body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant acted with malice.

Commonwealth v Buterbaugh, 2014 WL 1898968 (Pa. Super. May 13, 2014); Pa.S.S.C.J.I. § 15.2502C.

Upon reviewing both the standard jury instructions and those given by the trial court judge, I agree with the Superior Court's determination that the jury instruction was proper and an appropriate recitation of Pennsylvania law.  Because the jury instructions embody an accurate reflection of state law, they were neither ambiguous nor objectively unreasonable so as to relieve the Commonwealth of its burden of proving every element of the crime.  Therefore, McNeil's claim lacks merit and is denied.

### c.     Motive

In challenging the jury instructions on motive, McNeil asserts that the trial judge "failed to explain motive in a clear, complete and balanced manner."  The Superior Court addressed this issue as follows:

[McNeil] complains that the trial court failed to instruct the jury that it could consider the absence of motive as evidence of [McNeil's] innocence. Although [McNeil] was free to make this argument to the jury, he fails to cite any authority demonstrating his alleged entitlement to such an instruction, and our own review has not yielded any support for that proposition. Accordingly, we discern no basis upon which to conclude that the trial court erred in omitting [McNeil's] requested instruction.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 13 (Pa. Super. July 12, 2007). The Superior Court's finding that the trial court adequately instructed the jury is supported by the record and is binding on this court. See 28 U.S.C. 2254(e)(1). Federal habeas courts cannot reexamine state court determinations on state-law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Additionally, I find that the state court's instructions satisfied the requirements set forth in the well settled law applicable when considering the adequacy of state jury instructions on habeas review. See Beard, Traitz, DeCristoforo, supra. Therefore, this claim is denied.

**d.    Missing witness instruction**

McNeil next asserts that the trial judge erred by including a missing witness instruction regarding his two companions on the night at issue, Brooklyn and Snoop. The trial court judge gave the following instruction:

Now, there is a question about the weight, if any, you should give to the failure of the defense to call Brooklyn and Snoop, [individuals who McNeil] testified, were present with him at the L.A. Bar as witnesses. Ordinarily, a jury should infer nothing from the mere failure of a party to call a potential witness. If, however, three factors are present, and there is no satisfactory explanation for a party's failure to call a potential witness, the jury is allowed to draw a common sense inference that their testimony would have been unfavorable to the party. The three necessary factors are:

11

1) The person is available to that party only and not the other.
2) It appears the person has special information, material to the issue, and
3) The person's testimony would not necessarily be what's called cumulative.

Therefore, if you find those three factors present, and there's no satisfactory explanation for [McNeil's] failure to call Snoop and Brooklyn to testify, you may infer, if you choose to do so, that his testimony would have been unfavorable to the defense.

See N.T. 2/9/05, at 146-7.   The Superior court addressed this issue as follows:

[McNeil] contends that the trial court erred in giving this instruction because (1) the instruction violated his due process rights by implying a duty to call witnesses, (2) the Commonwealth was not entitled to the instruction since it made only cursory attempts to find the witnesses, and (3) the witnesses would not have been unbiased sources of truth.  It is well settled that although a trial court can never instruct that a jury may infer guilt from a defendant's failure to produce a witness, a trial court may instruct a jury as follows: when a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.  However, a missing witness instruction may be inappropriate where (1) the party moving for the inference failed to exert a good-faith effort to produce the witness, (2) the witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining the unbiased truth, or (3) the party expected to call the witness has a reasonable excuse for failing to produce the witness.

Here, the instruction of the trial court clearly and adequately conveyed the law regarding missing witnesses, and we conclude that there is no merit to [McNeil's] argument that the instruction violated his due process rights.  Moreover, the record belies [McNeil's] claim that the Commonwealth was not entitled to the instruction, since it establishes that (1) that [McNeil] had access to Brooklyn and Snoop, (2) that the Commonwealth made good faith, but unsuccessful efforts to locate the witnesses, and (3) that there was no hostility or prejudice between the missing witnesses and [McNeil] tainting the witnesses as sources of truth.  Thus, we detect no basis upon which to reverse the trial court for giving the missing witness instruction, given that sufficient evidence existed on the record to grant the Commonwealth's request for the instruction.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 14-16 (Pa. Super. July 12, 2007).

Pennsylvania cases acknowledge that a missing witness instruction may be proper where a party fails to produce a witness who, because of his or her relationship with that party, would normally be expected to testify favorably on behalf of the party. Commonwealth v. Dorman, 547 A.2d 757, 763 (Pa. Super. Sept. 8, 1988).  After reviewing both the standard for issuing a missing witness jury instruction and the instructions given by the trial court judge, I agree with the Superior Court's determination that the jury instruction was proper and an appropriate recitation of Pennsylvania law. Because the jury instructions embody an accurate reflection of state law, they were neither ambiguous nor objectively unreasonable so as to relieve the Commonwealth of its burden of proving every element of the crime.  Therefore, McNeil's claim lacks merit and is denied.

### e.    Missing evidence instruction

In his last challenge to the jury instructions, McNeil asserts that the trial judge erred by failing to include a missing evidence instruction requested by defense counsel. The Superior Court addressed this issue as follows:

> [McNeil] argues that he was entitled to a missing evidence instruction against the Commonwealth because the Commonwealth failed to produce (1) wood paneling that contained the bullet hole located in the wall between the jukebox and the 7th Street exit, the area where the victim was allegedly standing, and (2) the jukebox, on which there was a graze mark that the Commonwealth argued was created by the bullet that struck the victim.  [McNeil] limits his argument in this regard to an analysis following the missing witness standard set forth above.  However, an application of the above referenced standard compels the conclusion (1) that the

necessity to introduce the physical evidence was obviated by, and cumulative to, the introduction of the photographs of the bullet hole and the jukebox that had been properly admitted into evidence, and (2) that evidence was equally available to [McNeil]. Thus we detect no error in the ruling of the trial court that [McNeil] was not entitled to a missing evidence instruction regarding the wood paneling or the jukebox.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 16-17 (Pa. Super. July 12, 2007).

The Superior Court's finding that the trial court adequately instructed the jury is

supported by the record and is binding on this court. See 28 U.S.C. 2254(e)(1). Federal

habeas courts cannot reexamine state court determinations on state-law questions.

Estelle, 502 U.S. at 67-68.

Additionally, I find that the state court's instructions satisfied the requirements set

forth in the well settled law applicable when considering the adequacy of state jury

instructions on habeas review. The state court's adjudication of this claim did not result

in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, nor did it result in a decision that was based on an unreasonable

determination of the facts in light of the facts presented in the state court proceeding.

Therefore, McNeil's claims regarding improper jury instructions are denied.

**3.    Expert Witness**

McNeil next claims that the trial court erred by allowing a non-disclosed

Commonwealth expert to testify about "street" slang. Specifically, Commonwealth

witness Officer David Patino was permitted to testify as to the meaning of slang terms

used by McNeil in recorded statements entered into evidence by the Commonwealth. The

14

Superior Court addressed this issue as follows:

> While the failure of the Commonwealth to disclose its intent to have an expert testify as to the putative meaning of [McNeil's] argot, and to identify that expert, was a violation of the criminal discovery rules, specifically Pa.R.Crim.P. 573, it is nonetheless well settled that a discovery violation does not automatically warrant relief in the form of a new trial, but rather an appellant must demonstrate prejudice how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the late disclosure. Prejudice, in this context, requires more than an allegation of mere surprise, and the appellant must allege that the surprise affected his right to a fair trial, or was detrimental to his case in defense.
>
> The trial court had permitted Officer Patino to opine on the meaning of several terms used by [McNeil], specifically that "gat" meant gun, that "shorty" meant a female, that "from the jump" meant from the beginning of the fight, and that "popping" meant shooting. However, it bears emphasis that the trial court limited the officer's testimony, and specifically precluded him from opining that the term "banging out" meant "shooting" - an interpretation favored by the Commonwealth. Therefore the record belies [McNeil's] specific claim that he was prejudiced by an unfavorable interpretation of the term "banging out," and further reveals that the remaining terms which Officer Patino interpreted for the jury were not controversial or in dispute between the parties. Consequently, since we discern no prejudice inuring from the admission of Officer Patino's testimony, [McNeil] is not entitled to relief on this claim.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 17-18 (Pa. Super. July 12, 2007).

McNeil asserts that statements made by Officer Patino should not have been allowed under state rules of evidence. I conclude that this claim is meritless. For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir 2001). McNeil has failed to establish that. Because McNeil's rights to a fundamentally fair trial were not violated, his claims based on state law fall outside the scope of habeas review and do not

warrant relief.  Therefore, this claim is denied.

> **4.    The trial court erred by failing to grant a mistrial after the Commonwealth's expert witness revealed that the basis for his knowledge of "street slang" was his connection to illegal drugs**

McNeil next asserts that the trial court judge should have declared a mistrial after Officer Patino testified that the basis for his understanding of slang terms was his work in undercover narcotics and vice operations.  In denying this claim, the Superior Court stated:

> The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard.  The central tasks confronting the trial court upon the making of the motion is to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice.
>
> Although [McNeil] contends that the officer's reference to his employment in narcotics investigations tainted the proceedings, the record compels the conclusion that the limited reference to narcotics during the qualifications of an expert, who was offered for the sole purpose of interpreting four slang terms, was de minimis, particularly where no other references to narcotics or vice arose during trial. Moreover, the trial court, at the request of counsel, gave the jury a detailed cautionary instruction that clarified the narrow scope of Officer Patino's testimony, and admonished the jury not to attribute other bad acts to [McNeil] based upon Officer Patino's qualifications.  Therefore we detect no basis upon which to disturb the ruling of the trial court that denied the motion for a mistrial.

Commonwealth v. McNeil, No. 3016 EDA 2005, at 18-19 (Pa. Super. July 12, 2007).

When a habeas court is presented with a challenge to a state court's decision regarding a request for a mistrial, the question is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion to have done so, the question under AEDPA is instead whether the determination of the state court that

16

there was no abuse of discretion was an unreasonable application of clearly established federal law.  See Renico v. Lett, 559 U.S. 766 (2010).  Trial judges have broad discretion in deciding whether to grant a mistrial, but the power ought to be with the greatest caution, under urgent circumstances, and for very plain and obvious causes.  Id.  Here, the abuse of discretion standard applied by the Superior Court in affirming denial of McNeil's PCRA petition was consistent with applicable Supreme Court precedent. Therefore, I find that this claim lacks merit and is denied.

### 5.   The trial court judge abused his discretion by failing to give proper weight to mitigating evidence during sentencing

McNeil next asserts that the trial court judge failed to give proper consideration to the mitigation evidence presented at sentencing.  Federal habeas relief is only available to a petitioner if his conviction resulted from a violation of the constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Estelle, 502 U.S. at 67-68 n.2 (1991).  Sentencing is a matter of state criminal procedure and so long as the sentence imposed falls within the statutory bounds, it does not implicate federal constitutional issues.  Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 43 (3d Cir. 1984) (no due process right to the correct determinations of issues of state law); see also U.S. ex rel. Jackson v. Myers, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (the severity of a defendant's sentence alone does not constitute grounds for federal habeas relief); U.S. ex rel. Long v. Rundle, 327 F.2d 495, 496 (3d Cir. 1964) (sentencing issues are properly left to the state court); see also Pulley v. Harris, 465 U.S. 37 (1984) (a violation of state law is

17

insufficient to warrant habeas relief); <u>Smith v. Phillips</u>, 455 U.S. 209 (1982); <u>Smith v.</u>

<u>Zimmerman</u>, 768 F.2d 69 (3d Cir. 1985).

The Superior Court addressed this issue as follows:

[McNeil] argues that the trial court abused its discretion when it sentenced him to a term of imprisonment of from twenty years to forty years, which we regard as a challenge to the discretionary aspect of the sentence.  An appellant who challenges the discretionary aspects of his sentence does not have an appeal as of right, and to attain review of that aspect, an appellant must set forth facts establishing a substantial question in the concise statement of reasons relied upon for allowance of appeal required by Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure.  A substantial question exists where an appellant advances a colorable argument that the trial court's actions were either inconsistent with or contrary to specific provisions of the Sentencing Code or the fundamental norms which underlie the sentencing process.

[McNeil] has submitted a concise statement pursuant to Rule 2119(f), wherein he states that the trial court failed to give due consideration to mitigating factors. However, the learned Judge Robert L. Steinberg, in his opinion filed pursuant to Rule 1925(a) of the Rules of Appellate Procedure, thoroughly addressed the claims raised in this challenge to the imposition of a standard range minimum sentence at the statutory limit, and it would be purposeless for this court to elaborate on that discussion.  Thus, we agree that [McNeil] failed to raise a substantial question since (1) the sentence, which fell within the standard range guideline sentence, is presumed to have been appropriate under the Sentencing Code, and (2) given that the court had the benefit of a presentence investigation report, [McNeil's] challenges to the weight accorded to factors by the trial court do not pose a substantial question.

<u>Commonwealth v. McNeil</u>, No. 3016 EDA 2005, at 35-37 (Pa. Super. July 12, 2007).

In fashioning a sentence, "a court is required to consider the particular

circumstances of the offense and the character of the defendant."  <u>Commonwealth v.</u>

<u>Griffin</u>, 804 A.2d 1, 10 (Pa. Super. 2002) (citations and quotations omitted).  The

sentencing court clearly followed this mandate.  In reviewing the evidence of mitigating

18

circumstances, the trial court stated: "[I] considered the presentence report, the

Sentencing Guidelines and all the relevant and required information and testimony.  A

sentence in the mitigated range would require a patently dangerous and remorseless

individual who took the life of Veronica Gyles to receive an undeserved benefit."

Commonwealth v. McNeil, No. 3016 EDA 2005, at 29 (Ct. of Common Pleas of Lehigh

Co., June 15, 2006).  The court also remarked:

> [McNeil's] conduct demonstrated wanton disregard for the safety of the patrons of
> the bar, and directly caused the death of Veronica Gyles.  He has never expressed
> remorse nor acknowledged any responsibility for his actions either at trial or
> sentencing.  He also has demonstrated a history of violence, which has escalated
> into the death of another.  Additionally, his prior history of convictions, which
> extended for eighteen (18) years when he entered the L.A. Bar with a firearm,
> reflects an individual who, for most of his adult life, has consistently engaged in
> various types of criminal conduct.

Id. at 28.

I conclude that the state court decision that the trial court sufficiently considered

McNeil's mitigating circumstances is neither contrary to, nor an unreasonable application

of, federal law.  See Commonwealth v. Fullin, 892 A.2d 843, 850 (Pa. Super. 2006) (a

trial court is only obligated to consider mitigating circumstances, not to accept or

appreciate them).  The court ultimately determined that McNeil's mitigating

circumstances did not outweigh other aggravating factors.  Because this determination

does not violate his due process rights, this claim must be denied.

**6.      The trial court erred in refusing to allow McNeil to discharge his
attorney and appoint new counsel**

McNeil's final assertion is that the trial court erred by refusing to allow him to

discharge trial counsel five days before the commencement of trial.  This claim was not

presented to the state courts.  Rather, McNeil raised this claim initially as an ineffective

assistance of direct appellate counsel claim before the PCRA court.  A federal court,

absent unusual circumstances, should not entertain a petition for writ of habeas corpus

unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.

"The exhaustion doctrine is designed to give the state courts a full and fair opportunity to

resolve federal constitutional claims before those claims are presented to the federal

courts."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208

F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir.

1992)).  A petitioner typically exhausts his federal claims by fairly presenting each claim

at each stage of the state's established review process.  Villot v. Varner, 373 F.3d 327,

337 (3d Cir. 2004); see also Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d

1227, 1231 (3d Cir. 1992) ("the same method of legal analysis must be available to the

state court as will be employed by the federal court").  The habeas corpus petitioner has

the burden of proving exhaustion of all available state remedies.  Lambert v. Blackwell,

134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

Because the due process claim presented here employs a different method of legal

analysis than the ineffective assistance of counsel claim presented to the state court, his

20

due process claim was not "fairly presented" to the state courts and is therefore, unexhausted.  See Villot, 373 F.3d at 337; Evans, 959 F.2d at 1231.

If, however, I were to excuse McNeil from exhausting his state remedies for his due process claim, it would do him no good.  A return to state court would be futile due to "an absence of available State corrective process." Lines, 208 F.3d at 162.  The only way in which McNeil could present this claim in the state court at this time is by filing a second PCRA petition.  See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of limitations.[2]

In legal terms, McNeil is considered to have procedurally defaulted his claim because state procedural rules bar him from seeking further relief in state courts.  Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).  The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review.  Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002).  The Supreme Court

---

[2]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3).  McNeil's conviction became final in 2007.

has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 193 (citing Carrier, 477 U.S. at 494).  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 748.  In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496). To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  Schlup, 513 U.S. at 327.

McNeil has not provided this court with an explanation for his failure to properly

22

present this claim to the state courts.  As a result, he has not shown cause to excuse his

procedural default.[3]  Carrier, 477 U.S. at 488.  Moreover, because McNeil makes no

colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice

will result if his claims are not reviewed.  Coleman, 501 U.S. at 748; Schlup, 513 U.S. at

327 (citing Carrier, 477 U.S. at 496).  Consequently, federal review of this claim is

foreclosed.

Even if, however, I were to find that McNeil had properly exhausted his due

process claim, I conclude that the claim is without merit.  The PCRA court, evaluating

McNeil's ineffectiveness of direct appellate counsel claim, stated the following:

> Trial was scheduled to commence on January 24, 2005, but on January 19, 2005, Attorney Asteak filed an "Application to Withdraw as Counsel."  A hearing was held on this application the same date and held under advisement.  During the hearing, this Court gave [McNeil] three options, including retaining new counsel before the start of trial.  If he did so, the Court agreed to continue the trial. [McNeil] failed to do so.

> ****

> In this case, [McNeil] hired Attorney Asteak, a very capable and experienced trial attorney.  [McNeil] claims that he expressed to Attorney Asteak his desire to change counsel several months before the hearing on the Application to Withdraw. However, this contention is belied by the record.  Attorney Asteak testified at the PCRA hearing that [McNeil] did not attempt to terminate his representation until January 8, 2005.  On this date, Attorney Asteak met with [McNeil] regarding trial preparation.  [McNeil] appeared very nervous during this meeting, and abruptly fired Attorney Asteak.  In addition, at the PCRA hearing, [McNeil] admitted that until the hearing on January 19, 2005, he never expressed to the Court any

---

[3]Because no cause has been demonstrated, the court need not address the prejudice requirement.  Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

dissatisfaction with Attorney Asteak and never requested a continuance of the trial in order to secure new counsel.

The primary reason for [McNeil's] discontent with Attorney Asteak was the unsupported allegation that Attorney Asteak was unprepared for trial. [McNeil] claims that Attorney Asteak was unprepared to represent him since he only visited him at the prison on two or three occasions before trial. This assertion is incorrect. Attorney Asteak was involved with the case from its inception. He represented [McNeil] from the time of the preliminary hearing through the time of trial. Over the course of this time, Attorney Asteak testified that he met [McNeil] at the prison 15 to 20 times, and also had his associates meet with [McNeil] on other occasions. He hired Kaitlyn Brennan as a mitigation specialist in preparation for the death penalty phase, in the event the case reached that point, as well as a forensic psychologist and a private investigator. As of January 8, 2005, Attorney Asteak had prepared trial notebooks for every conceivable witness. Attorney Asteak also specifically met with [McNeil] on January 8, 20, and 22, 2005, in order to review [McNeil's] testimony and other trial matters. With this level of preparation, it is evident that Attorney Asteak was ready to proceed to trial. There is no evidence that Attorney Asteak was unprepared to provide [McNeil] with an adequate and effective defense. [McNeil's] concerns regarding Attorney Asteak's preparedness was unjustified.

In light of the absence of irreconcilable differences between McNeil and Attorney Asteak, there was no reason to grant the application. It appears the motivation behind [McNeil's] discontent was a case of nervousness associated with the approaching trial date. Even so, at the hearing on the "Application to Withdraw as Counsel" [McNeil] was not precluded from hiring other private counsel. Instead, [McNeil] was provided three choices by this Court:

> THE COURT: Your choices Mr. McNeil, are as follows: choice number one is, come Monday morning to continue with Mr. Asteak; choice number two is to represent yourself...Choice number three is to hire a new attorney and have that attorney enter his appearance no later than Monday morning, and if he does so I will grant a continuance of your trial.

[McNeil] failed to satisfy options two or three and continued with Attorney Asteak.

****

> Under the facts of this case, [McNeil] was not deprived of his Constitutional right to a lawyer of his own choosing.  If a defendant who engages his own counsel refuses . . . to engage other counsel and waits until the trial of his case to demand an opportunity to engage other counsel, he can repeat this strategy every time his case is called for trial, and society would not receive the protection and equal justice to which both they and the accused are entitled.

Commonwealth v. McNeil, 119 EDA 2010, at 6-11 (Ct. of Common Pleas of Lehigh Co.

Dec. 9, 2009) (citations omitted).

The Sixth Amendment is not meant "to ensure that a defendant will inexorably be

represented by the lawyer whom he prefers."  Wheat v. United States, 486 U.S. 153, 159

(1988).  Rather, "the appropriate inquiry focuses on the adversarial process, not on the

accused's relationship with his lawyers and such."  Id. at 160.  The trial court determined

that McNeil's attorney had been diligent and effective, that McNeil's claims lacked

substance, and that granting McNeil's application five days before trial would cause

unnecessary delay.  Further, the trial court gave McNeil the opportunity to engage new

counsel before the start of trial and agreed to grant a continuance if he did so.  McNeil did

not.  Therefore, I conclude that McNeil's claim lacks merit.

**CONCLUSION:**

After close and objective review of the arguments and evidence, I conclude that

McNeil's petition for writ of habeas corpus is meritless.  Accordingly, McNeil's petition

will be denied.

Similarly, because McNeil's claims are both legally and factually meritless, there

is no need to conduct an evidentiary hearing, as it would not change the outcome of this

matter.  <u>See</u> 28 U.S.C. § 2254(e)(2); <u>see</u> <u>also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474

(2007) ("an evidentiary hearing is not required on issues that can be resolved by reference

to the state court record") (citations omitted).

     An appropriate order follows.